1  ROBBINS ARROYO LLP
   BRIAN J. ROBBINS (190264)
2  GEORGE C. AGUILAR (126535)
   ASHLEY R. RIFKIN (246602)
3  600 B Street, Suite 1900
   San Diego, CA  92101
4  Telephone: (619) 525-3990
   Facsimile: (619) 525-3991
5  E-mail: brobbins@robbinsarroyo.com
           gaguilar@robbinsarroyo.com
6          arifkin@robbinsarroyo.com

7  Attorneys for Plaintiff Melvin Brenner

8  [Additional Counsel Listed on Signature Page]

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12  MELVIN BRENNER, Derivatively on       )  Case No.
    Behalf of SUNPOWER CORPORATION,       )
13                                         )  VERIFIED STOCKHOLDER DERIVATIVE
                                           )  COMPLAINT FOR BREACH OF
14                    Plaintiff,           )  FIDUCIARY DUTY, WASTE OF
                                           )  CORPORATE ASSETS, AND UNJUST
15          v.                             )  ENRICHMENT
                                           )
16  THOMAS H. WERNER, CHARLES D.           )
    BOYNTON, BERNARD CLÉMENT,              )
17  LADISLAS PASZKIEWICZ, DANIEL           )
    LAURÉ, CATHERINE A. LESJAK,            )
18  THOMAS R. MCDANIEL, PAT WOOD           )
    III, ARNAUD CHAPERON, DENIS            )
19  GIORNO, JEAN-MARC OTERO DEL            )
    VAL, and HUMBERT DE WENDEL,            )
20                                         )
                                           )
21                    Defendants,          )
                                           )
22          v.                             )
                                           )
23  SUNPOWER CORPORATION, a                )
    Delaware corporation,                  )
24                                         )
                      Nominal Defendant.   )
25                                         )  DEMAND FOR JURY TRIAL

26

27

28

## NATURE AND SUMMARY OF THE ACTION

1.   This is a stockholder derivative action brought by plaintiff on behalf of SunPower Corporation ("SunPower" or the "Company") against certain of its officers and directors for breaches of fiduciary duties, waste of corporate assets, and unjust enrichment and other violations of law at the expense of the Company.  These wrongs have resulted in hundreds of millions of dollars to SunPower and other damages, such as to its reputation and goodwill.

2.   SunPower is an energy company that designs, manufactures, and markets solar electric power technologies to residential, commercial, and power plant customers.  Among the Company's products are: (i) solar module technology and solar power systems that are designed to generate electricity over a system life, typically exceeding twenty-five years; (ii) integrated smart energy software solutions; (iii) installation, construction, and ongoing maintenance and monitoring services; and (iv) financing solutions that provide customers with a variety of purchasing or financing options.

3.   This action concerns the harm caused to the Company by the defendants due to their responsibility for a series of improper statements concerning SunPower's business and financial health.  Specifically, the defendants, SunPower's directors and officers, made, approved, and certified improper financial statements contained within SunPower's press releases, annual report for the fiscal year ended January 3, 2016, and quarterly reports for the first and second quarters of 2016 filed with the U.S. Securities and Exchange Commission ("SEC").  In those public statements and SEC filings, the defendants painted a picture of SunPower as a company with strong and stable financial performance and business prospects, and competitively situated in a growing industry.  However, as the Company was forced to later admit, these statements were woefully inaccurate when made.  In causing the Company to issue the improper financial statements, these defendants breached their fiduciary duties owed to the Company and its stockholders.

4.   On August 9, 2016, after months of improper statements concerning the Company's financial condition and business prospects, SunPower issued a press release disclosing that it was revising its fiscal year 2016 guidance and undertaking a significant

manufacturing realignment.  Specifically, the Company disclosed that it was hurt by a number of factors, including: (i) "customers adopting a longer-term timeline for project completion"; (ii) "aggressive [Power Purchase Agreement ("PPA")] pricing by new market entrants"; and (iii) "continued market disruption in the YieldCo environment."[1]

5.     Additionally, the Company revealed that it would undergo a manufacturing realignment which will result in restructuring charges totaling $30-45 million, a substantial portion of which would be included in the third quarter of 2016.  Further, as a result of these "challenges," the Company announced that it was substantially decreasing its fiscal year guidance.  The result was that instead of realizing the earlier-forecasted net income of $0 to $50 million, the Company was now expecting to sustain a net loss of $175 million to $125 million.

6.     After these revelations, SunPower lost approximately $617 million, 30%, of its market capitalization.  Further, SunPower and certain of its officers and directors are now subject to class action complaints in the U.S. District Court for the Northern District of California, alleging violations of federal securities laws (the "Securities Class Actions").

## JURISDICTION AND VENUE

7.     Jurisdiction is conferred by 28 U.S.C. §1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.

8.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this Court in accordance with 28 U.S.C. §1391(a) because: (i) SunPower maintains its principal place of business in this District; (ii) one or more of the

---

[1] The "YieldCo environment" describes the corporate structure whereby a parent energy company creates a separate company for the purpose of operating finished products.  Solar energy companies, in particular, create YieldCos because they are often a cheaper way of raising capital to finance new projects that may be seen as risky or unproven.  By allowing the parent company to separate fixed assets that generate revenue from the riskier aspects of the business, YieldCos can provide investors with stable cash flow.

1   defendants either resides in or maintains executive offices in this District; (iii) a substantial

2   portion of the transactions and wrongs complained of herein, including the defendants' primary

3   participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in

4   violation of fiduciary duties owed to SunPower, occurred in this District; and (iv) defendants

5   have received substantial compensation in this District by doing business here and engaging in

6   numerous activities that had an effect in this District.

7   **INTRADISTRICT ASSIGNMENT**

8   10.    A substantial portion of the transactions and wrongdoings which give rise to the

9   claims in this action occurred in the County of San Jose, and as such, this action is properly

10  assigned to the San Jose division of this Court.

11  **THE PARTIES**

12  **Plaintiff**

13  11.    Plaintiff Melvin Brenner is a stockholder of SunPower and has continuously held

14  stock since November 2007.  Plaintiff is a citizen of New York.

15  **Nominal Defendant**

16  12.    Nominal defendant SunPower is a Delaware corporation with principal executive

17  offices located at 77 Rio Robles, San Jose, California.  Accordingly, SunPower is a citizen of

18  Delaware and California.  SunPower delivers complete solar systems to residential, commercial,

19  and power plant customers worldwide.  The Company markets solar module technology and

20  solar power systems designed to generate electricity over a system life typically exceeding

21  twenty-five years, as well as software solutions which enable customers to manage and optimize

22  their cost of energy.  SunPower also offers installation, construction, and ongoing maintenance

23  services for their products, as well as providing financing solutions for a variety of purchasing or

24  leasing options.  In June 2011, SunPower became a majority owned subsidiary of Total Energies

25  Nouvelles Activités USA ("Total") pursuant to a tender offer in which Total purchased 60% of

26  SunPower's former Class A and Class B common stock.  As a result of this transaction,

27  SunPower entered into an "Affiliation Agreement," with Total, pursuant to which Total appoints

28  members to a designated amount of seats on SunPower's Board of Directors (the "Board") based

on Total's ownership interest.  As of October 2016, five of SunPower's nine directors were designated as Total directors.  Total is a subsidiary of Total S.A., a French oil and natural gas company.  As of January 3, 2016, SunPower had approximately 8,309 full time employees worldwide with approximately 1,283 employees located in the United States.

**Defendants**

13.     Defendant Thomas H. Werner ("Werner") is SunPower's Chairman of the Board and has been since May 2011; President and has been since May 2010; and Chief Executive Officer ("CEO") and a director and has been since June 2003.  Defendant Werner is named as a defendant in the related Securities Class Actions that allege he violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").  Defendant Werner knowingly, recklessly, or with gross negligence: (i) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; and (ii) failed to maintain adequate internal controls with respect to SunPower's financial reporting.  SunPower paid defendant Werner the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2015 | $600,000 | $6,751,062 | $1,265,722 | $28,181 | $8,644,966 |

Defendant Werner is a citizen of California.

14.     Defendant Charles D. Boynton ("Boynton") is SunPower's Chief Financial Officer ("CFO") and Executive Vice President and has been since March 2012.  Defendant Boynton was also SunPower's Acting Financial Officer in March 2012 and Vice President of Finance and Corporate Development from June 2010 to March 2012.  Defendant Boynton is named as a defendant in the related Securities Class Actions that allege he violated sections 10(b) and 20(a) of the Exchange Act.  SunPower paid defendant Boynton the following compensation as an executive:

| Year | Salary | Stock Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|---|---|---|---|---|---|
| 2015 | $443,077 | $1,125,309 | $435,231 | $30,949 | $2,034,566 |

Defendant Boynton is a citizen of California.

15.     Defendant Bernard Clément ("Clément") is a SunPower director and has been since July 2011.  Defendant Clément is Total S.A.'s Senior Vice President of Business & Operations, New Energies division and has been since July 2012.  Defendant Clément was also Total S.A.'s Senior Vice President of Gas Assets, Technology, and Research & Development, Gas & Power division, from January 2010 to July 2012 and Vice President, Exploration & Production division from 2003 to 2009.  Defendant Clément held various positions at Total S.A. beginning in 1983.  Defendant Clément knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  Defendant Clément is a citizen of France.

16.     Defendant Ladislas Paszkiewicz ("Paszkiewicz") is a SunPower director and has been since June 2016.  Defendant Paszkiewicz is Total S.A.'s Senior Vice President of Mergers and Acquisitions and has been since 2015.  Defendant Paszkiewicz was also Total S.A.'s Senior Vice President of the Americas, Exploration and Production division from 2010 to 2014, and Senior Vice President of the Middle East, Exploration and Production division from 2007 to 2010.  Defendant Paszkiewicz held various positions at Total S.A. beginning in 1985.  Defendant Paszkiewicz knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  Defendant Paszkiewicz is a citizen of France.

17.     Defendant Daniel Lauré ("Lauré") is a SunPower director and has been since March 2016.  Defendant Lauré is Total's President and CEO and has been since March 2016.  Defendant Lauré was also Total's Senior Vice President of Industrial Assets, Finance & Information Technology from 2012 to 2015.  Defendant Lauré held various positions of

increasing responsibility within the Total Group beginning in 1988.  Defendant Lauré knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  Defendant Lauré is a citizen of France.

18.    Defendant Catherine A. Lesjak ("Lesjak") is a SunPower director and has been since June 2013.  Defendant Lesjak is a member of SunPower's Audit Committee and Finance Committee and has been since at least April 2015.  Defendant Lesjak knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  SunPower paid defendant Lesjak the following compensation as a director:

| Fiscal Year | Salary | Stock Awards | Total |
|---|---|---|---|
| 2015 | $100,030 | $300,000 | $400,030 |

Defendant Lesjak is a citizen of California.

19.    Defendant Thomas R. McDaniel ("McDaniel") is a SunPower director and has been since February 2009.  Defendant McDaniel is the Chairman of SunPower's Audit Committee and Finance Committee and a member of those committees and has been since at least April 2015.  Defendant McDaniel knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  SunPower paid defendant McDaniel the following compensation as a director:

| Fiscal Year | Salary | Stock Awards | Total |
|---|---|---|---|
| 2015 | $100,030 | $300,000 | $400,030 |

Defendant McDaniel is a citizen of California.

20.     Defendant Pat Wood III ("Wood") is a SunPower director and has been since November 2005.  Defendant Wood is a member of SunPower's Audit Committee and has been since at least April 2015.  Defendant Wood knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  SunPower paid defendant Wood the following compensation as a director:

| Fiscal Year | Salary | Stock Awards | Total |
|---|---|---|---|
| 2015 | $125,030 | $300,000 | $425,030 |

Defendant Wood is a citizen of Texas.

21.     Defendant Arnaud Chaperon ("Chaperon") was a SunPower director from July 2011 to September 2016.  Defendant Chaperon is Total S.A.'s Senior Vice President of Prospective Analysis, Institutional Relations and Communications, New Energies division, and has been since 2007.  Defendant Chaperon held various positions at Total S.A. beginning in 1980.  Defendant Chaperon was a member of SunPower's Finance Committee from at least April 2015 to September 2016.  Defendant Chaperon knowingly or recklessly: (i) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; and (ii) failed to maintain adequate internal controls with respect to SunPower's financial reporting.  Defendant Chaperon is a citizen of Belgium.

22.     Defendant Denis Giorno ("Giorno") was a SunPower director from July 2011 to June 2016.  Defendant Giorno was also Total's CEO from January 2013 to April 2016; President from November 2011 to April 2016; and General Manager from November 2011 to January 2013.  Defendant Giorno was also Total S.A.'s Vice President of New Ventures, Gas & Power division, from October 2007 to October 2011 and Vice President of Business Development, Gas

& Power division, from 2005 to October 2007.  Defendant Giorno held various positions at Total S.A. beginning in 1975.  Defendant Giorno knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  Defendant Giorno is a citizen of California.

23.     Defendant Jean-Marc Otero del Val ("Otero del Val") was a SunPower director from July 2011 to March 2016.  Defendant Otero del Val was also Total S.A.'s Vice President of Strategy & Business Development and Deputy Senior Vice President of Business Operations, New Energies division, from July 2012 to at least April 2015 and Vice President of Electricity, Gas & Power division, from September 2011 to June 2012.  Defendant Otero del Val held various positions at Total S.A. beginning in 1998.  Defendant Otero del Val knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors negatively impacting the Company's performance.  Defendant Otero del Val is a citizen of South Korea.

24.     Defendant Humbert de Wendel ("de Wendel") was a SunPower director from July 2011 to September 2016.  Defendant de Wendel was also the Total Group's Treasurer from January 2012 to at least March 2016; Total's Senior Vice President of Corporate Business Development from 2006 to 2011; and Vice President from 2000 to 2006.  Defendant de Wendel held various positions at Total S.A. beginning in 1982.  Defendant de Wendel was a member of SunPower's Finance Committee from at least April 2015 to September 2016.  Defendant de Wendel knowingly or recklessly: (i) reviewed and approved improper financial statements that did not properly account for the several factors negatively impacting the Company's performance; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper financial statements that did not properly account for the several factors

negatively impacting the Company's performance.  Defendant de Wendel is a citizen of France.

25.     The defendants identified in ¶¶13-14 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶13, 15-24 are referred to herein as the "Director Defendants."   The defendants identified in ¶¶18-20 are referred to herein as the "Audit Committee Defendants."  Collectively, the defendants identified in ¶¶13-24 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties of the Individual Defendants**

26.     By reason of their positions as officers, directors, and/or fiduciaries of SunPower and because of their ability to control the business and corporate affairs of SunPower, the Individual Defendants owed SunPower and its stockholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage SunPower in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of SunPower and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit.

27.     Each director and officer of the Company owes to SunPower and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.   In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information. During fiscal 2015, the Board met fourteen times.

**Additional Duties of the Audit Committee Defendants**

28.     The Audit Committee Defendants owed specific duties to SunPower, under its Charter in effect during 2016, to review and approve quarterly and annual financial statements, earnings press releases, and SunPower's internal controls over financial reporting.  During fiscal

2015, the Audit Committee met nine times.  In particular, the Audit Committee's Charter in effect during the relevant period provided as follows:

A.      Review and Reporting Procedures

The Committee shall:

1.      review (i) major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles or practices as suggested by management or the independent auditor; (ii) major issues as to the adequacy of the Company's internal controls and any special compensating procedures or audit steps adopted in light of material control deficiencies and material weaknesses in the Company's internal control over financial reporting; (iii) analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; (iv) the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements; and (v) an annual report furnished by Company management identifying key risks to the Company's worldwide business;

2.      discuss with management and the independent auditor the Company's annual audited financial statements and quarterly unaudited financial statements and review the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" prior to filing the Company's annual report on Form 10-K and quarterly reports on Form 10-Q, respectively, with the SEC and, with respect to the annual financial statements, the appropriateness and quality of accounting and auditing principles and practices as well as the adequacy of internal controls that could significant affect the Company's financial statements;

3.      discuss with management and the independent auditor the Company's earnings press releases (paying particular attention to the use of any "pro forma" or "adjusted" non-GAAP information), the type and presentation of information included in the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies, provided, however, that the Committee need not discuss in advance each instance in which the Company may provide financial information or earnings guidance, except that if such financial information or an earnings guidance news release is issued, such information or release shall be discussed in advance with the Chair of the Committee or, in the event of his or her unavailability, another Committee member;

4.      report regularly to the Board a summary of matters addressed at Committee meetings, any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's

independent auditor, the performance of the Company's internal audit function and any other matters that the Committee deems appropriate or is requested to report by the Board;

5.      oversee the Company's internal audit function, including (i) reviewing and concurring with the appointment, replacement, reassignment or dismissal of senior internal audit personnel, including the Senior Director, Internal Audit (the "SDIA"), who acts as the principal liaison between the Company's internal audit department and the Committee and reports directly to the Committee and administratively to the CFO; (ii) considering, in consultation with the SDIA and senior internal audit personnel, the scope and plan of the internal audit; (iii) reviewing with the SDIA, senior internal audit personnel and the Company's independent auditor the coordination of audit efforts with the objective of achieving completeness of coverage, reduction of redundant efforts, and the effective use of audit resources; (iv) considering and reviewing with the SDIA and senior internal audit personnel (a) significant findings during the year and management's responses thereto, (b) any difficulties encountered in the course of their audits, including any restrictions on the scope of their work or access to required communication, (c) any changes required in the planned scope of their audit plan and (d) the internal audit department's budget and staffing; and (v) reviewing with the Chief Financial Officer, Principal Accounting Officer and the Company's independent auditor the sufficiency and quality of the internal audit staff and other financial and accounting personnel of the Company;

6.      review the independent financial statement and internal control audit by: (i) reviewing the independent auditor's proposed audit scope and approach; (ii) discussing with the Company's independent auditor the financial statements, the Company's internal control over financial reporting and the audit findings, including any significant adjustments, management judgments and accounting estimates, significant new accounting policies and disagreements with management, any deficiencies, significant deficiencies or material weaknesses and any other matters described in PCAOB Auditing Standard No. 16 or required by the applicable SEC and NASDAQ Rules; and (iii) reviewing reports submitted to the Committee by the independent auditor in accordance with applicable SEC Rules;

7.      oversee a post-audit review of the financial statements and audit and control findings with the SDIA, senior internal audit staff, the Chief Financial Officer and the Principal Accounting Officer, including any suggestions for improvements provided to management by the independent auditor, management's response to such suggestions and the extent to which such improvements have been implemented;

8.      direct the Company's independent auditor to review before filing with the SEC the Company's interim financial statements included in quarterly reports on Form 10-Q, using professional standards and procedures for conducting such reviews;

- 11 -

9.    review before release the unaudited quarterly operating results in the Company's quarterly earnings release;

10.    recommend to the Board whether to include the annual audited financial statements in the Company's annual report on Form 10-K;

11.    review and discuss with the Chief Executive Officer, Chief Financial Officer and the independent auditor (i) the adequacy and effectiveness of the Company's internal controls over financial reporting including any significant deficiencies, material weaknesses and significant changes in internal controls which are reasonably likely to affect the Company's ability to record, process, summarize and report financial information or were reported to the Committee by management and any fraud involving management or other employees who have a significant role in the Company's internal controls, (ii) the results of the internal control audit by the independent auditor, (iii) any special audit steps adopted in light of any material control deficiencies and (iv) the effectiveness of the Company's disclosure controls and procedures;

12.    review and discuss with management and the independent auditor (i) any material financial or nonfinancial arrangements that do not appear on the Company's financial statements, (ii) any transactions or courses of dealing with parties related to the Company that are significant in size or involve terms or other aspects that differ from those that would likely be negotiated with independent parties and that are relevant to an understanding of the Company's financial statements and (iii) material financial risks that are designated as such by management or the independent auditor; and

13.    review policies and procedure on executive expense accounts and perquisites, including the use of Company assets, and consider the results of any work in these areas by the internal audit function or the Company's independent auditor.

**Control, Access, and Authority**

29.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of SunPower, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

30.    Because of their advisory, executive, managerial, and directorial positions with SunPower, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of SunPower, including information regarding the several factors negatively impacting the Company's performance.

31.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of SunPower, and was at all times acting within the course and scope of such agency.

**Reasonable and Prudent Supervision**

32.     To discharge their duties, the officers and directors of SunPower were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of SunPower were required to, among other things:

(a)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(d)     remain informed as to how SunPower conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

**Breaches of Duties**

33.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its stockholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of

the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of SunPower, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its stockholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of SunPower's Board.

34.    The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to misrepresent its financial results and, in particular, the several factors negatively impacting the Company's performance, as detailed herein, and by failing to prevent the Individual Defendants from taking such illegal actions.  In addition, as a result of defendants' illegal actions and course of conduct, the Company is now the subject of the Securities Class Actions that allege violations of securities laws.  As a result, SunPower has expended, and will continue to expend, significant sums of money.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

35.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

36.    During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its financial results including the several factors negatively impacting the Company's performance; (ii) enhance the Individual Defendants' executive and directorial positions at SunPower and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions; and (iii) deceive the investing public, including stockholders of SunPower, regarding the Individual Defendants'

management of SunPower's operations and the Company's financial results that had been misrepresented by defendants. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

37. The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct. During this time, the Individual Defendants caused the Company to issue improper financial results based upon the failure to disclose the several factors negatively impacting the Company's performance.

38. The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

39. The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

40. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

**FACTUAL BACKGROUND**

41. SunPower designs, manufactures, and markets solar electric power technologies. SunPower operates three business segments: Residential, Commercial, and Power Plant.

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

42.     The Residential segment generally concerns the sale of solar power systems, including solar cells and solar panels, directly to end customers such as homeowners and dealer partners.   Included in the sale of its solar power systems, SunPower offers services such as financing and leasing programs, as well as on-going monitoring and maintenance.   During fiscal 2015, the revenue generated by the Residential segment represented 41% of the Company's total revenue.

43.     The Commercial segment concerns the sale of a variety of solar power products designed to address a wide range of site requirements and are often bundled with the Company's software analytics.   SunPower sells its commercial energy solutions to commercial and public entity end customers through a variety of means, including direct sales of turn-key engineering, procurement and construction services, sales to the Company's third-party global dealer network, and sales of the Company's operating and maintenance services.   The Company also offers some of its commercial customers alternatives to purchasing systems, such as selling energy under PPAs.   During fiscal 2015, the revenue generated by the Commercial segment represented 17 % of the Company's total revenue.

44.     The Power Plant segment concerns sales of large-scale solar products and systems, including power plant project development and project sales, engineering, procurement, and construction services, and operating and maintenance services.   During fiscal 2015, the revenue generated by the Power Plant segment represented 42% of the Company's total revenue.

45.     The Company's solar cells are manufactured at facilities located in the Philippines and Malaysia.   According to the Company's Annual Report on Form 10-K for fiscal year 2015 (the "2015 Form 10-K") filed with the SEC on February 19, 2016, the Company was building out an additional Philippine facility to manufacture solar cells that was expected to be fully operational in fiscal 2016.   The solar cells are used to manufacture the Company's solar panels at its assembly facilities located in the Philippines, Mexico, and France.

46.     Prior to the relevant period, SunPower was an industry leader in offering what many deemed the most efficient solar products on the market.   However, the high cost of its products, when combined with the economic slowdown, cheaper raw materials, and increased

competition, has proved disastrous for the Company.  Additionally, the multi-year extension of the Investment Tax Credit ("ITC"), a federal policy providing for a 30% tax credit on solar systems on qualifying residential and commercial properties, while beneficial to the industry in the long-term, has in effect, reduced the customers' urgency to complete new solar projects by the end of 2016.  Despite these challenges, the Individual Defendants continued to paint the picture of SunPower as a company with strong financial performance and business prospects.

**IMPROPER FINANCIAL STATEMENTS**

47.    On February 17, 2016, the Company issued a press release entitled, "SunPower Reports Fourth Quarter and Fiscal Year 2015 Results."  The press release stated:

> 2015 was a transformational year for the solar industry as increasing demand, favorable policy developments and broad global support for renewables created strong industry growth fundamentals. SunPower benefited from these trends as we exceeded our forecasts and closed out the year with record fourth quarter and full year non-GAAP 2015 results….

> Going forward, we see significant upside opportunity in the U.S. power plant market as the recent extension of the U.S. federal solar investment tax credit (ITC) provides a sustainable, long term market structure to support further growth.  Internationally, we continue to expand our footprint into new markets and recently announced our first project in Mexico….  This power purchase agreement (PPA) is one of the first significant solar PPAs in Mexico and extends our position as a leader in international solar development. Construction of this project will begin this year and is expected to be completed in 2017.

> We also executed well in our residential business. In North America, our performance was solid as our fourth quarter results exceeded plan, we gained market share and broadened our leasing footprint as megawatt installed growth exceeded 45 percent year over year. Additionally, based on our fourth quarter bookings, we expect continued strong residential demand in 2016.

> *   *   *

> "Solid execution across all segments, along with the ability to leverage our development capabilities, enabled us to post record results for the fourth quarter and 2015 fiscal year," said Chuck Boynton, SunPower CFO. "Our balance sheet remains strong as we successfully executed a new convertible bond offering and recently renewed our revolver including increasing its size to $300 million. With an approximately $1 billion cash position and our undrawn revolver, we have the resources we need to continue our long term growth initiatives."

> *   *   *

**Financial Outlook**

Given strong global demand as well as a favorable policy environment, the company remains very confident that it can achieve its long term strategic and financial goals by leveraging its flexible business model to drive sustainable growth. With the recent extension of the ITC, the company anticipates increasing its investment in the United States while maintaining its global go-to-market focus.

\* \* \*

For 2017, the company believes that with the ITC extension, further investment in the U.S. market and a strong global project pipeline, it is well positioned to sustainably grow its EBITDA.

48. On February 17, 2016, the Company held an analyst and investor conference call to discuss the Company's earnings for the fourth quarter and fiscal year 2015. During the call, defendants Werner and Boynton reiterated the Company's strong financial performance and business prospects. Defendant Werner stated, "[W]e have seen a significant improvement in the solar market landscape over the last 12 months, and the market fundamentals for solar have never been better. We believe that SunPower is uniquely position to capitalize in this environment.… Given the unprecedented global market opportunity, we feel the time is ripe for SunPower to aggressively expand our share and footprint." Defendant Boynton added, "Looking forward to 2017 and beyond, we are very encouraged by the recent ITC extension, as this should improve both volumes and margins in the US market."

49. On February 19, 2016, the Company filed its 2015 Form 10-K with the SEC. The 2015 Form 10-K reaffirmed the Company's financial results previously announced on February 17, 2016, and was signed by defendants Werner and Boynton. Defendant Boynton signed the 2015 Form 10-K on behalf of defendants Chaperon, Clément, Giorno, Lesjak, McDaniel, Otero del Val, de Wendel, and Wood, as authorized by his Power of Attorney. Further, the 2015 Form 10-K contained certifications required under the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Werner and Boynton, attesting to the accuracy of SunPower's financial statements and the adequacy of its internal controls over financial reporting. Those improper SOX certifications set forth the following:

I, [Werner and Boynton], certify that:

1. I have reviewed this Annual Report on Form 10-K of SunPower Corporation;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

> (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

> (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

> (c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

> (d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

> (a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and
>
> (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

50.    On May 5, 2016, the Company issued a press release entitled, "SunPower Reports First Quarter 2016 Results."  The press release stated:

> Our residential business continued its strong performance as we met or exceeded our quarterly goals across all regions….   With solid residential industry fundamentals, particularly in the U.S, we expect continued strong performance in this segment during 2016.
>
> We also made significant progress in our commercial business during the quarter, adding projects to our pipeline which stands over $1 billion….  As a result, we expect to double our commercial market share in the U.S. this year….
>
> "Overall, we executed well in the first quarter as we achieved our development targets and saw solid performance across our segments," said Chuck Boynton, SunPower CFO. "We continued to add to our HoldCo asset base with a number of large projects scheduled for completion in the second half of the year. We exited the quarter with a strong balance sheet including significant liquidity through our $300 million revolver, which remains undrawn. In addition, we were pleased to close our most recent financing, a $200 million construction revolver that will be used to finance our anticipated growth, primarily in the commercial sector."

51.    On May 5, 2016, the Company held an analyst and investor conference call to discuss the Company's earnings for the first quarter of 2016.  Defendant Boynton reiterated the Company's strong performance, stating, "[the first quarter] was a solid quarter for the Company on many metrics, as we met or exceeded our forecasts and positioned the Company for a strong second half of the year."  During the question and answer portion of that call, an analyst asked the defendants, "[W]hat gives you guys confidence that you'll be able to grow or maintain [earnings before interest, taxes, depreciation, and amortization]  next year when it seems that the other people do not have the same level of visibility?"  Defendant Werner responded:

> Our view of 2017 remains unchanged from what we said on the analyst day back in November, and the foundation for that is severalfold.

- 20 -

One, we purchased purposely in diversified markets geographically and segments and increasingly on technology. So it diversifies out any single country or single segment risk to a large degree, or alternatively gives you more comfort in longer-term guidance. Secondly, we believe our product differentiation remains in modules, and is expanding in smart energy and so that gives us comfort in terms of customers choosing us…. Thirdly, we are cleaning capacity with P-Series and that ramp is on track and so we continue to have confidence in the ramp of that product, and the performance both in terms of cost and the performance of energy production both are on track.

So the key variables from November remain in place….

So I'd generally say, and I have said this several times in various forums, the solar fundamentals have never been better, of course, that is over the next few years and not a particular year. So those [are] the reasons why we're still comfortable with what we said in November.

52.     On May 6, 2016, the Company filed its Quarterly Report on Form 10-Q for the 2016 fiscal first quarter with the SEC.  The Form 10-Q reaffirmed the Company's financial results previously announced on May 5, 2016 and also contained SOX certifications by defendants Werner and Boynton.

## THE TRUTH EMERGES

53.     On August 9, 2016, SunPower issued a press release disclosing its second quarter 2016 financial results.   In this press release, the Company identified a number of factors negatively impacting its performance and forecasts for the second half of 2016.  Specifically, the Company explained that: (i) many of its power plant customers were adopting a longer-term timeline for project completion; (ii) near-term economic returns had deteriorated due to aggressive PPA pricing by new market entrants; and (iii) continued market disruption in the YieldCo environment.

54.     SunPower's August 9, 2016 press release disclosed further that due to these challenges, the Company would realign its manufacturing operations around its core markets, including closing its Philippine facility and transferring its equipment to lower cost facilities in Mexico.  Consistent with this realignment, the Company expected to reduce its workforce by approximately 15%, or 1,200 employees, primarily related to the closure of the Philippine facility and incur restructuring charges totaling between $30 million and $45 million, with a

1   substantial portion of charges incurred in the third quarter of 2016.

2         55.    Lastly, the Company announced that it was updating its previously disclosed

3   fiscal year 2016 guidance, as well as providing selected forecasts for fiscal year 2017. The

4   Company announced that it now expected 2016 revenue of $2.8 billion to $3 billion, gross

5   margin of 9.5% to 11.5% and a net loss of $175 million to $125 million.

6         56.    On August 9, 2016, the Company held an analyst and investor conference call to

7   discuss the Company's earnings for the second quarter of 2016.  During the call, analysts clearly

8   feeling blindsided by the Company's unexpected announcement, pointedly asked defendants at

9   what point they became aware of the negative factors impacting the Company's guidance:

10       [Analyst]:

11       When you guys have publicly spoken over the past near couple of weeks, we

12       didn't hear any kind of hint of this … nothing of this kind of size realignment.
    And so can you just tell us when this all came to light here?

13       [Defendant Werner]:

14

15       …As we got into [2016], on buyers that were buying their projects, on the impact
    of both the ITC and bonus depreciation became more apparent and materialized in

16       what they were willing to pay for solar projects.

17   In response to yet another analyst's questioning the timing of the revelations, defendant Werner

18   responded, "the market development in our case materialized in May and beyond….   I

19   understand the concern, but the fact of the matter is these changes materialized for us over the

20   last few months.

21         57.    Thus, by defendant Werner's own admission, the Individual Defendants knew or

22   recklessly disregarded the negative factors impacting the Company's business prospects as early

23   as the beginning of 2016, yet in public statements and SEC filings made in February and May

24   2016, the Individual Defendants continued to stress the strength of the Company's financial

25   performance and maintained their guidance for 2016 and beyond.

26         58.    As a result of the improperly accounted for negative factors impacting the

27   Company's financial performance and operations, the Individual Defendants knowingly or

28   recklessly caused the Company to issue improper statements regarding the financial performance

and forecasts contained the Company's 2015 Form 10-K and the 2016 quarterly reports filed on Forms 10-Q.  In particular, the Audit Committee Defendants knowingly or recklessly reviewed and approved these improper financial statements and defendants Werner and Boynton knowingly or recklessly signed SOX certifications attesting to the accuracy of SunPower's financial statements and the adequacy of its internal controls over financial reporting.

### REASONS THE STATEMENTS WERE IMPROPER

59.     The statements contained the Company's press releases and SEC filings were improper when made because the Individual Defendants knowingly failed to disclose the following:

(a)     many of its Power Plant customers were adopting a longer-term timeline for project completion as a result of an extension in the ITC;

(b)     the Company's near-term economic returns had deteriorated due to aggressive PPA pricing by new market entrants;

(c)     continued market disruption in the YieldCo environment;

(d)     the Company lacked adequate internal and financial controls; and

(e)     as a result of the above, the Company's financial statements were improper at all relevant times.

### DAMAGES TO SUNPOWER CAUSED BY THE INDIVIDUAL DEFENDANTS

60.     As a result of the Individual Defendants' wrongful conduct, SunPower disseminated improper financial statements that misrepresented the several factors negatively impacting the Company's performance.  These improper statements have devastated SunPower's credibility as reflected by the Company's almost 30% market capitalization loss following the August 9, 2016 press release.  Additionally, SunPower is now the subject of the Securities Class Actions alleging securities laws violations in connection with the improper financial reporting. The Company will face substantial costs in connection with these lawsuits.

61.     SunPower's performance issues also damaged its reputation within the business community and in the capital markets.  In addition to price, SunPower's current and potential customers consider a company's ability to accurately value its business prospects and evaluate

sales and growth potential.  Businesses are less likely to award contracts to companies that are uncertain about their own financial conditions and operations.  Given the substantial market capitalization loss SunPower incurred as a result of the improper statements, SunPower's ability to raise equity capital or debt on favorable terms in the future is now seriously impaired.  In addition, the Company stands to incur higher marginal costs of capital and debt because the improper statements and misleading projections disseminated by the Individual Defendants have materially increased the perceived risks of investing in and lending money to the Company.

62.     As a direct and proximate result of the Individual Defendants' conduct during the relevant period, SunPower has expended and will continue to expend significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred in connection with investigating SunPower's fiscal 2015 through second quarter 2016 financial results;

(b)     costs incurred in investigating and defending SunPower and certain officers in the Securities Class Actions, plus potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment; and

(c)     costs incurred from compensation and benefits paid to the defendants who have breached their duties to SunPower.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

63.     Plaintiff brings this action derivatively in the right and for the benefit of SunPower to redress injuries suffered, and to be suffered, by SunPower as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  SunPower is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

64.     Plaintiff will adequately and fairly represent the interests of SunPower in enforcing and prosecuting its rights.

65.     Plaintiff was a stockholder of SunPower at the time of the wrongdoing complained of, has continuously been a stockholder, and is a current SunPower stockholder.

1    66.    The current Board of SunPower consists of the following nine individuals:

2    defendants Werner, Clément, Lauré, Lesjak, McDaniel, Paszkiewicz, and Wood and non-

3    defendants Helle Kristoffersen and Laurent Wolffsheim.  Plaintiff has not made any demand on

4    the present Board to institute this action because such a demand would be a futile, wasteful, and

5    useless act, as set forth below.

6    **Demand Is Futile as to Defendant Werner**

7    67.    As alleged above, defendant Werner breached his fiduciary duty of loyalty and

8    good faith by making improper financial statements regarding the several factors negatively

9    impacting the Company's performance. Defendant Werner also failed to maintain effective

10   internal controls over SunPower's financial reporting.  As a result, defendant Werner faces a

11   sufficiently substantial likelihood of liability for his breach of fiduciary duty.  Accordingly,

12   demand is futile as to defendant Werner.

13   **Demand Is Futile as to the Audit Committee Defendants**

14   68.    Audit Committee Defendants Lesjak, McDaniel, and Wood, as members of the

15   Audit Committee, were responsible under the Audit Committee Charter in effect during the

16   relevant period for reviewing and approving quarterly and annual financial statements, earnings

17   press releases, and SunPower's internal controls over financial reporting.  Despite these duties,

18   the Audit Committee Defendants knowingly or recklessly reviewed and approved improper

19   financial statements that did not properly account for the several factors negatively impacting the

20   Company's performance.   The Audit Committee Defendants also reviewed and approved

21   SunPower's ineffective internal controls over financial reporting.  Accordingly, these defendants

22   face a sufficiently substantial likelihood of liability for breach of their fiduciary duty of loyalty

23   and good faith.  Demand upon these defendants is futile.

24   **Demand Is Futile as to Director Defendants Werner, Clément, Lauré, Lesjak, McDaniel,**
     **Paszkiewicz, and Wood**
25

26   69.    Defendants Werner, Clément, Lauré, Lesjak, McDaniel, Paszkiewicz, and Wood,

27   breached their fiduciary duty of loyalty and good faith by making improper financial statements

28   in SunPower's 2015 Form 10-K and quarterly reports for the first and second quarters of 2016 on

1   Forms 10-Q that did not properly account for the several factors negatively impacting the

2   Company's performance.  As a result, these defendants face a sufficiently substantial likelihood

3   of liability for their breach of fiduciary duties.  Accordingly, demand is futile as to these

4   defendants.

5   **Demand Is Futile as to the Director Defendants**

6         70.   The Director Defendants' conduct is particularly egregious in light of the

7   Company's settlement of prior securities class and derivative actions against certain officers and

8   directors of the Company, alleging breaches of fiduciary duties for making improper statements

9   regarding the Company's financial condition and its business prospects.  There, as here, those

10   improper statements resulted in the Company incurring significant losses when forced to restate

11   its guidance.  The Company's 2014 settlement of *In re SunPower Corporation Shareholder*

12   *Derivative Litigation*, Lead Case No. 1:09-CV-158522 (Cal. Superior Ct., Santa Clara Cnty.) for

13   example, required the Company to adopt and maintain for a minimum of three years, a number

14   of corporate governance reforms, including strengthening its internal controls and Audit

15   Committee's oversight function, to avoid future harm to the Company for a recurrence of the

16   wrongful conduct.  Unfortunately for SunPower and its stockholders, the Director Defendants

17   have continued to engage in similar wrongful conduct in a manner that not only violates the law,

18   but is patently inconsistent with the terms of the Company's prior settlements.  Accordingly,

19   demand is futile as to these defendants.

20         71.   Plaintiff has not made any demand on the other stockholders of SunPower to

21   institute this action since such demand would be a futile and useless act for at least the following

22   reasons:

23         (a)   SunPower is a publicly held company with over 138 million shares

24   outstanding and thousands of stockholders;

25         (b)   making demand on such a number of stockholders would be impossible

26   for plaintiff who has no way of finding out the names, addresses, or phone numbers of

27   stockholders; and

28         (c)   making demand on all stockholders would force plaintiff to incur

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

1  excessive expenses, assuming all stockholders could be individually identified.

2  **COUNT I**

3  **Against the Individual Defendants for Breach of Fiduciary Duty**

4  72.   Plaintiff incorporates by reference and realleges each and every allegation

5  contained above, as though fully set forth herein.

6  73.   The Individual Defendants owed and owe SunPower fiduciary obligations.  By

7  reason of his fiduciary relationships, the Individual Defendants owed and owe SunPower the

8  highest obligation of due care, loyalty, and good faith.

9  74.   The Individual Defendants, and each of them, violated and breached their

10  fiduciary duties of candor, good faith, and loyalty by knowingly, recklessly, or with gross

11  negligence, making and improperly certifying improper annual and quarterly financial statements

12  that did not properly account for the several factors negatively impacting the Company's

13  performance.  These improper financial statements were included in SunPower's fiscal 2015

14  through second quarter 2016 quarterly SEC filings and earnings press releases.  The Officer

15  Defendants knowingly, recklessly, or with gross negligence, failed to maintain a sufficient level

16  of internal controls over financial reporting to prevent the issuance of improper financial

17  information.

18  75.   The Director Defendants, as directors of the Company, owed SunPower the

19  highest duty of loyalty.  These defendants breached their duty of loyalty by recklessly permitting

20  the improper activity detailed herein.  The Director Defendants knew or were reckless in not

21  knowing that: (i) the Company's customers would adopt a longer-term timeline for project

22  completion due to the extension of the ITC; (ii) the Company's near-economic returns would

23  deteriorate due to aggressive PPA pricing by new market entrants; (iii) the continued market

24  disruption in the YieldCo environment would impact the Company's assumptions related to

25  monetizing deferred profits; and (iv) as a result of the foregoing, representations concerning the

26  Company's financial prospects were improper.  Accordingly, the Director Defendants breached

27  their duty of loyalty to the Company.

28

76.     The Audit Committee Defendants, as members of the Audit Committee, breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee.  The Audit Committee Defendants knew or were reckless in not knowing that the press releases, public announcements, and SEC filings contained improper statements and omissions.  In failing in their duty of oversight and failing to appropriately review financial results, the Audit Committee Defendants failed their duty of loyalty, as required by the Audit Committee Charter in effect during the relevant period. The Audit Committee Defendants' actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

77.     As a direct and proximate result of defendants Werner and Boynton's and Does 1-25's failure to perform their fiduciary obligations, SunPower has sustained significant damages.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

78.     Plaintiff, on behalf of SunPower, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

79.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.     As a result of the misconduct described above, the Individual Defendants wasted corporate assets: (i) by failing to maintain sufficient internal controls over financial reporting to prevent the issuance of improper financial results that will need to be restated;  (ii) by failing to properly consider the interests of the Company and its public stockholders; (iii) by failing to conduct proper supervision; (iv) by paying undeserved incentive compensation to certain of its executive officers; and (v) by incurring potentially hundreds of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

81.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

82.     Plaintiff, on behalf of SunPower, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

83.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

84.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of SunPower.  The Individual Defendants were unjustly enriched as a result of the salaries, bonuses, and other forms of compensation remuneration they received while breaching fiduciary duties owed to SunPower.

85.   Plaintiff, as a stockholder and representative of SunPower, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

86.   Plaintiff, on behalf of SunPower, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands for a judgment as follows:

A.   Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.   Directing SunPower to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect SunPower and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote the following Corporate Governance Policies:

1.   a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

- 29 -

2.      a provision to permit the stockholders of SunPower to nominate at least three candidates for election to the Board; and

3.      a proposal to strengthen SunPower's internal controls over financial reporting and specifically with respect to the several factors negatively impacting the Company's performance that caused the Company to update its previously disclosed guidance;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting defendants' assets so as to assure that plaintiff on behalf of SunPower has an effective remedy;

D.      Awarding to SunPower restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.      Awarding to plaintiff reasonable attorneys' fees, consultant and expert fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 17, 2016

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
GEORGE C. AGUILAR
ASHLEY R. RIFKIN

/s/ *Brian J. Robbins*
BRIAN J. ROBBINS

600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile:  (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
          gaguilar@robbinsarroyo.com
          arifkin@robbinsarroyo.com

VITA LAW OFFICES P.C.
RICHARD J. VITA
100 State Street, 9th Floor
Boston, MA 02109

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Telephone: (617) 426-6566
Facsimile: (617) 249-2119
E-mail: rjv@vitalaw.com

Attorneys for Plaintiff Melvin Brenner

1126834

VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

<u>VERIFICATION</u>

I, Melvin Brenner, hereby declare as follows:

I am the plaintiff in the within entitled action.  I have read the Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment.  Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: _October 14, 2016_

_Melvin J. Brenner_
MELVIN BRENNER